STATE

v.

Edward D'ALO.

No. 80–546–C.A.

Supreme Court of Rhode Island.

Sept. 29, 1981.

Dennis J. Roberts, II, Atty. Gen., Maureen McKenna Goldberg, Asst. Atty. Gen., for plaintiff.

Thomas A. DiLuglio, Amy R. Tabor, John Tramonti, Jr., Providence, for defendant.

## OPINION

SHEA, Justice.

The defendant in this case, Edward D'Alo (D'Alo) was found guilty after a trial by jury in the Superior Court of conspiracy to commit robbery and kidnapping. He was given a ten-year sentence with four years suspended and four years probation.

In this appeal from his conviction he raises six separate issues. Three issues involve alleged errors in the trial justice's instructions to the jury. Two errors are alleged in permitting evidence of other criminal conduct involving D'Alo to come before the jury. The final issue alleges that because bench conferences that occurred during the trial were not placed on the record, D'Alo was thereby prejudiced.

On December 2, 1977, a United Parcel Service (UPS) truck was held up and its driver abducted. The driver, May Briggs (Briggs), was delivering packages on a predetermined route in the city of Warwick. While she was delivering a particular package which allegedly had been addressed by the conspirators to an isolated house on the route, a man appeared brandishing a gun, and the robbery and kidnapping of Briggs ensued.

Three persons were subsequently indicted by the Grand Jury for Kent County for the crimes of robbery and kidnapping. The same three plus defendant D'Alo were also indicted by the Grand Jury for Providence County for conspiracy to commit robbery and kidnapping.

During the course of D'Alo's trial two of his indicted coconspirators, Robert Oliva and William Dyer, testified for the prosecution. They had received promises from the State Police of a favorable recommendation to the Attorney General for disposition in their cases. Robert Oliva's testimony established that he, William Dyer and Robert Rivers committed the abduction of Briggs and the robbery of the UPS truck. Oliva testified that D'Alo helped the three to plan the operation by giving daily counsel and advice regarding the best locations and route they should use. He also stated that D'Alo received some of the stolen property from the robbery.

William Dyer admitted that he participated in the robbery and kidnapping. He testified that he had attended a dinner meeting along with D'Alo, Oliva and Rivers

at which the planned robbery and kidnapping were discussed. He further stated that D'Alo participated in the discussion. Both state witnesses were cross-examined at length by D'Alo's counsel. This cross-examination brought out evidence of prior crimes and bad acts by Oliva which was intended to impeach his credibility.

D'Alo presented character witnesses on his behalf and then he took the stand himself. D'Alo testified that his business in 1977 involved toolmaking and findings for the jewelry industry. He denied any participation in the conspiracy. He admitted attending the dinner with the other three defendants at a local restaurant. He insisted, however, that he left their table as soon as the proposed robbery came under discussion, saying he wanted no part of it. He was asked by his own attorney if he had ever received any stolen goods from the robbery, and he responded, "No, I did not. Positively not." In answer to another question, whether or not he had fenced any goods as a result of the robbery, he responded, "I never handled any goods whatsoever." When asked, "So you never received anything from the robbery which took place pursuant to the acts of Oliva, Rivers and Dyer?" he responded, "Positively not." Finally on cross-examination, in response to several questions by the state seeking to clarify D'Alo's denial of ever having handled stolen goods "whatsoever," he insisted that he had never handled any stolen goods in his shop, and that he had never knowingly had any stolen goods on his property.

In rebuttal, the state again presented Robert Oliva to contradict D'Alo's denials of ever receiving stolen goods. Thereafter, D'Alo's counsel engaged in a lengthy cross-examination of Robert Oliva. This cross-examination brought out testimony that implicated D'Alo in several other criminal enterprises in addition to the robbery and kidnapping in question. Oliva testified that he had hijacked several trucks and that D'Alo had fenced some of the stolen goods from those thefts. He also testified that one of the trailers taken in one of the hijackings was given to D'Alo for use as a storage facility at his business. D'Alo knew it was stolen, he said, because Oliva had told him it was. Oliva painted over serial numbers on the roof of the trailer while it was on D'Alo's property so it could not be spotted and identified by police authorities using helicopters.

We will first consider D'Alo's complaint about the trial justice's charge and then evaluate his objections to the admission of D'Alo's alleged other criminal activities. The final portion of this opinion will relate to the bench-conferences issue.

It is not necessary to repeat the charge given the jury. We do observe, however, that the charge informed the jury that the state would have to prove beyond reasonable doubt that D'Alo entered into an unlawful agreement with Robert Oliva and/or William Dyer to commit an unlawful act, the robbery and kidnapping, and that the word "agreement" meant a meeting of the minds of the parties. It is clear from the wording of the instructions given to the jury that the evidence had to prove that D'Alo had entered into an agreement regarding the commission of the crime of robbery and kidnapping, and that if he was merely present when the agreement was discussed, but was not a participant in that agreement, he could not be found guilty.

D'Alo argues that he was entitled to have his requested instruction given verbatim as written. The particular written request for instructions elaborated at length on the proposition that presence when a conspiracy is discussed is not enough to prove guilt. He refers to this instruction as his theory of the case.

Under our law, a defendant is entitled to a charge that explains and informs the jury of those propositions of law which relate to the material issues of fact that the evidence tends to support. *State v. Infantolino*, 116 R.I. 303, 355 A.2d 722 (1976). The trial justice is free to instruct the jury in his own words in a criminal proceeding, as long as he states the applicable law. *State v. Verdone*, 114 R.I. 613, 337 A.2d 804 (1975). When requested instructions are

adequately covered by the instructions given to the jury, refusal to give the requested instruction is not error. *State v. Sharbuno*, R.I., 390 A.2d 915 (1978); *State v. Casala*, 113 R.I. 690, 325 A.2d 540 (1974). We find no error in the jury instructions as given by the trial justice.

■ D'Alo also asserts that in giving his instructions on conspiracy to commit robbery and kidnapping, the trial justice did not explain or define the words "robbery" and "kidnapping." He argues that with the evidence of other crimes, such as highjackings, before the jurors, they could have become confused about which robbery the conspiracy involved. This contention seems rather unlikely. Furthermore, there was no objection on that ground made to the charge as given. Such an objection, if timely made before the jury retired to deliberate, would have given the trial justice an opportunity to give the additional instruction, had he believed it necessary. Having failed to take an exception, defendant waived it and may not raise it on appeal. A party is barred from challenging a purportedly erroneous instruction unless he lodges a timely objection to the charge, which is specific enough to inform the trial justice of the nature of the alleged error. *Majewski v. Porter*, R.I., 403 A.2d 248 (1979).

■ The next issues concern the admission of evidence of other activity by D'Alo which was criminal in nature. Objection is made to the evidence that came into the record when D'Alo was cross-examined and also through rebuttal testimony given by the state's witnesses.

When D'Alo denied ever having handled stolen goods "whatsoever" on direct and cross-examination, the state was justified in attempting to impeach his credibility not only by further cross-examining D'Alo but also by eliciting testimony from other witnesses who had knowledge of the alleged criminal activity.

Any defendant in a criminal trial who testifies in his own behalf runs the risk of having his credibility impeached. By testifying, he places his own credibility in issue. Nevertheless, D'Alo argues that impeaching evidence, which is directly on point, must be excluded if it involves criminal activity. That is not the law. It was not error to admit this impeaching evidence.[1] In *United States v. Beno*, 324 F.2d 582 (2d Cir. 1963), *cert. denied*, 379 U.S. 880, 85 S.Ct. 147, 13 L.Ed.2d 86 (1964), the court noted that when the defendant in his direct testimony "falsely states a specific fact, the prosecution will not be prevented from proving, either through cross-examination or by calling its own witnesses, that he lied *as to that fact.* The rationale behind this rule is not difficult to perceive, for even if the issue injected is irrelevant or collateral, a defendant should not be allowed to profit by a gratuitously offered misstatement." [Citations omitted.] (Emphasis in original.) *Id.* at 588.

■ We also find D'Alo's additional argument that it was error to admit extrinsic evidence to impeach this testimony to be without merit. D'Alo's attorney himself, in cross-examining the rebuttal witness Oliva, brought out many references of prior misconduct on D'Alo's part not previously brought out by the state.

■ A final issue raised by D'Alo regarding the impeaching evidence involves the lack of a jury instruction to limit the purpose for which the rebuttal evidence was introduced. At the close of the evidence and the trial justice's instructions to the jury no exception or objection was taken by D'Alo. Again, an objection would have alerted the trial justice and given him an opportunity to give the requested additional instruction, if he had believed it appropri-

---

1. In a number of instances, evidence, even illegally obtained evidence, which would not be admissible in the prosecution's case in chief, may be admitted for impeachment purposes in order that a defendant's perjured testimony may not go unchallenged. *See United States v. Havens*, 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980); *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); and *Walder v. United States*, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), in which the illegally obtained impeaching evidence was admissible to counter the defendant's broad denial that he had ever purchased, sold, or possessed drugs.

ate. As stated earlier, the failure to make timely objection to the instructions given in the ordinary circumstances precludes a challenge to the correctness or sufficiency of the charge given. *State v. McGehearty,* R.I., 394 A.2d 1348 (1978); *State v. Levitt,* 118 R.I. 32, 371 A.2d 596 (1977). The defendant's challenge to the instruction raises no novel claim and therefore this case is one of the ordinary circumstances referred to in *McGehearty* and *Levitt,* both *supra.* Thus, the failure to comply with the procedural rule constitutes a waiver.

D'Alo's final claim of error is based on the trial justice's refusal to have all bench conferences placed on the record by the court stenographer. There were several bench conferences during the trial, many of them at D'Alo's request. At one point during the trial D'Alo asked that they all be placed on the record. The trial justice said this was not necessary and none were recorded.

General Laws 1956 (1969 Reenactment) § 8–5–5, as amended by P.L. 1979, ch. 320, § 1, provides that court stenographers "shall report stenographically the proceedings in the trial of every action or proceeding, civil or criminal, in the superior court and the family court." D'Alo does not cite any authority that would support his argument that § 8–5–5 requires the stenographic reporting of all bench conferences. The cases that were cited, *Braxton v. United States,* 395 A.2d 759 (D.C. App. 1978), and *State v. O'Clare,* 292 A.2d 186 (Me. 1972), are inapplicable. The *Braxton* case has nothing to do with bench conferences recorded or unrecorded, and in the *O'Clare* case unrecorded bench conferences were not an issue raised on appeal.

■ Bench conferences frequently serve to permit the court and counsel to resolve some nonevidentiary matter, such as housekeeping problems with exhibits or difficulties with witness availability or other rather inconsequential procedural questions. When a bench conference involves resolution of such nonmaterial matters, stenographic recording is clearly unnecessary. Occasionally, however, the court may also resolve more serious matters at the side bar, such as evidentiary objections or objections to the judge's jury instructions. Although it is within the discretion of the trial justice to allow or not to allow counsel to raise such material matters at bench conferences, when convenience and efficiency are served thereby, such conferences may be allowed and should be recorded.

■ For D'Alo to prevail on this issue, he must at least set forth the matters allegedly raised and the manner in which he was prejudiced by the fact that the bench conferences were not recorded. He has not done so. This court is unaware of the matters discussed at these bench conferences, the comments or conclusions of the trial justice or counsel during these conferences, or the effect those comments or conclusions would have had on the defendant or on his rights. In the absence of any representation of facts that would establish error or prejudice, there is no basis for the granting of relief to the defendant on this issue. *See State v. Mastracchio,* 112 R.I. 487, 497, 312 A.2d 190, 196 (1973).

For the reasons stated, it is our opinion that the defendant's appeal is without merit. The appeal is denied and dismissed, the judgment of conviction is affirmed, and the papers of the case are remanded to the Superior Court.