STATE

v.

Barry DOWELL.

No. 85–90–C.A.

Supreme Court of Rhode Island.

July 15, 1986.

Arlene Violet, Atty. Gen., Thomas Dickinson, Sp. Asst. Atty. Gen., for plaintiff.

William F. Reilly, Public Defender, Janice M. Weisfeld, Barbara Hurst, Asst. Public Defenders, for defendant.

OPINION

WEISBERGER, Justice.

This case comes before us on appeal by the defendant, Barry Dowell, from a judgment of conviction of first-degree sexual assault and burglary. Following guilty verdicts on both charges by a jury, the trial justice denied the defendant's motion for a new trial. We affirm. The facts of the case are as follows.

At the trial the complaining witness's testimony tended to show that defendant called her at her apartment and engaged in sexually explicit conversation. Thereafter, defendant entered the house that the complaining witness shared with three other young women in the town of Narragansett. The complaining witness was a student at the University of Rhode Island, and her apartment mates were absent from the dwelling for the Christmas holiday period. Consequently, the complaining witness was alone on January 3, 1984.

The defendant entered the house without permission at approximately 2 a.m., put his hand over the complaining witness's mouth, and forcibly conducted her into the bedroom. The defendant then ordered the complaining witness to commit an act of masturbation with a candle. When she re-

fused, he inserted the candle into her vagina. Subsequently he engaged in forcible sexual intercourse with her. She did not immediately report the attack because of fear of defendant. Apparently she first reported the incident to a boyfriend on or about January 11, 1984. She ultimately complained to the police on January 12, 1984.

At trial, defendant testified in his own behalf and admitted the sexual encounter, including the act of masturbation and sexual intercourse. His version of the event differed from that of the complaining witness in that he asserted that she performed the sexual acts set forth in her testimony voluntarily on a promise that he would pay her the sum of $500 by the weekend. He admitted in his testimony that he did not pay the money and never intended to honor his agreement. He suggested that his failure to pay resulted in her complaint to the police. In support of his appeal, defendant raises two issues that will be considered in the order in which they are raised in defendant's brief.

I

DID THE TRIAL JUSTICE ERR IN ALLOWING THE PROSECUTION TO IMPEACH THE CREDIBILITY OF DEFENDANT BY READING THE SPECIFIC NATURE OF TWO CONVICTIONS FOR DISORDERLY CONDUCT?

It is undisputed that on two occasions in 1981, defendant had pleaded nolo contendere to charges of disorderly conduct and received concurrent ninety-day suspended sentences, with six months' probation on each charge. At trial, during defendant's testimony, he admitted pleading nolo to these two charges in the Superior Court and having had the aforementioned sentences imposed. On cross-examination the prosecutor asked defendant to acknowledge that each of the charges of disorderly conduct had arisen out of exposing his genitals to the view of others, namely, two different women in the Centerville Variety

Store. General Laws 1956 (1981 Reenactment) § 11–45–1 describes the crime of disorderly conduct in the following terms:

"Disorderly conduct.—A person commits disorderly conduct if he intentionally, knowingly or recklessly:

(a) engages in fighting or threatening, or in violent or tumultuous behavior; or

(b) in a public place or near a private residence that he has no right to occupy, disturbs another person by making loud and unreasonable noise which under the circumstances would disturb a person of average sensibilities; or

(c) directs at another person in a public place offensive words which are likely to provoke a violent reaction on the part of the average person so addressed; or

(d) alone or with others, obstructs a highway, street, sidewalk, railway, waterway, building entrance, elevator, aisle, stairway, or hallway to which the public or a substantial group of the public has access or any other place ordinarily used for the passage of persons, vehicles, or conveyances; or

(e) engages in conduct which obstructs or interferes physically with a lawful meeting, procession, or gathering; or

(f) enters upon the property of another and for a lascivious purpose looks into an occupied dwelling on the property through a window or other opening; or

(g) exposes his or her genitals to the view of others under circumstances in which his or her conduct is likely to cause affront, distress, or alarm to such other persons."

It is apparent from the complaints filed in the District Court and later transmitted on appeal to the Superior Court that the specific offense with which defendant was charged was that set forth in § 11–45–1(g). The term "disorderly conduct" in and of itself does not indicate the type or nature of offense with which a defendant has been charged and may range from fighting, through the making of noise and obstructing a highway, to indecent exposure. Al-

though courts have stated that the details underlying a conviction used to impeach a defendant's credibility when he has become a witness in his own defense may not be presented to the jury, *State v. Carmichael,* 395 A.2d 826 (Me.1978), it has also been held that the prosecution is entitled to impeach a defendant's testimony and attack his credibility with the fact and the "differing nature" of his prior convictions, *United States v. Moore,* 735 F.2d 289 (8th Cir. 1984).

In *United States v. Harding,* 525 F.2d 84 (7th Cir.1975), the defendant was charged with the sale of cocaine. The defendant took the stand in his own defense and on cross-examination was impeached by confrontation with a conviction for the offense of possession of eighty pounds of marijuana. Although the Court of Appeals reversed the conviction for improper emphasis of the details of the prior crime, it is notable that Judge John Paul Stevens (now a member of the United States Supreme Court) observed:

"In this case, the fact that the prior offense resulted in a prison sentence of at least two years, and *the fact that 80 pounds of marijuana were involved,* characterized the offense as sufficiently serious to justify the permissible inference [diminution of credibility]. And since both of these facts could be ascertained from the written record of the conviction, they could be placed in evidence without opening the door to collateral inquiries. Moreover, there is no reason why such facts may not be brought out during the cross-examination of the witness instead of by the use of the record of conviction itself. It was therefore not error for the prosecutor to elicit testimony from appellant about his sentence and about the quantity of marijuana described in the charge on which he was convicted." (Emphasis added.) *Id.* at 89–90.

■ Consequently, it appears that an explicit statement of the nature of the charge, including information about its gravity, is not forbidden, although the detailed facts associated with the charge may not be utilized for impeachment purposes. In this state, by statute, a defendant who desires to do so "shall be admitted to testify like any other witness, except that conviction or sentence for any crime or misdemeanor may be shown to affect his credibility." G.L. 1956 (1985 Reenactment) § 9–17–15. It is reasonably clear that in order to affect the credibility of the defendant as a witness, the trier of fact must be given some reasonable indication of the nature and gravity of the charge. The term "disorderly conduct" is wholly lacking in any indication of the nature or gravity of an offense and could certainly provide no clue to the jury in respect to the credibility of the defendant.

It must also be noted that in the case at bar, defendant had admitted the sexual conduct. The only issue to be determined was whether he had paid for or obtained the performance of the sexual activities from the victim by force or threat of force. Consequently, no impermissible prejudice was visited upon defendant by the specific description of the charges for which he had been convicted. Therefore, the trial justice did not err in allowing the prosecution to confront defendant with the specific nature of his convictions for disorderly conduct.

## II

### DID THE TRIAL JUSTICE ERR IN ALLOWING DEFENDANT TO BE CROSS–EXAMINED CONCERNING HIS SEXUALLY EXPLICIT PHONE CALLS TO OTHER WOMEN?

During defendant's testimony, he was asked by his own counsel on direct examination a question concerning his decision to call the victim's telephone number. To this question he replied, "I did something crazy, opened the phone book and there was a number staring me in the face, and I dialed. It's that simple." On cross-examination the prosecution questioned defendant about whether this phone call was an

isolated incident. The defendant answered that it was not an isolated incident and that he had made such calls before. However, he said that he had not done so as a regular practice and that as a rule he did not keep notes and records of the people whom he called. He further stated that he had made such calls more than several times and had kept notes or records of some of the calls. Thereupon, the prosecutor examined defendant in detail concerning his calls to other women.

The defendant argues that since he admitted on cross-examination that he had made such calls before and had kept records thereof, he should not have been impeached any further by exposing the detailed evidence of such phone calls. Therefore, it becomes necessary to scrutinize the rationale upon which the state based its impeachment. Certainly the direct testimony given by defendant relating to his decision to call the victim could have given rise to the inference (though it was not compelled) that defendant's conduct on this occasion was highly unusual, that it was "crazy" and the result of an impulse.

■ Consequently, the state had a right by cross-examination to diminish the likelihood that the jury would draw such an inference. In pursuing this point on cross-examination, we are of the opinion that the state was not required to terminate its impeaching cross-examination at that point where, in the opinion of defense counsel, it may have achieved the goal of showing that the call to the victim was not an isolated incident. In the case at bar, the issue of credibility was crucial. There was no question that the incident of sexual encounter had occurred. The sole question was whether the actions were voluntary or involuntary. Any testimony that tended to support defendant's version of the incident should properly have been subjected to a searching cross-examination to rebut not only the facts stated but also the inferences and conclusions that might be drawn from such testimony. *State v. Soto*, 477 A.2d 945, 949 (R.I.1984).

■ In allowing cross-examination for impeaching purposes, courts have frequently approved reference to matters that would not be admissible as part of the prosecution's case in chief. Even illegally obtained evidence may be admitted for impeachment purposes when a defendant gives testimony that may be construed as absolving himself from fault in a criminal case. *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); *Walder v. United States*, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954).

We are of the opinion that in the circumstances of this case, the trial justice did not err in permitting the cross-examination of the defendant in respect to his telephone calls made to other women, including the confrontation of the defendant with certain sexually explicit magazines upon which he had written the women's telephone numbers.

For the reasons stated, the defendant's appeal is denied and dismissed. The judgment of conviction is hereby affirmed. The papers in the case may be remanded to the Superior Court.

BEVILACQUA, C.J., participated in the oral argument and in the decision of the court but retired prior to the publication of this opinion.