STATE

v.

John J. SOARES.

No. 88–131–C.A.

Supreme Court of Rhode Island.

April 11, 1989.

James E. O'Neil, Atty. Gen., Nicholas Trott Long, Annie Goldberg, Asst. Attys. Gen., for plaintiff.

Barbara Hurst, Asst. Public Defender, Providence, for defendant.

## OPINION

SHEA, Justice.

On June 16, 1987, after a jury trial in the Superior Court the defendant, John J. Soares, was convicted of breaking and entering a public building at night with intent to commit larceny and of simple assault on a police officer. The defendant's motion for new trial was denied. He was sentenced to three years of imprisonment, one year to serve followed by two years of probation, plus restitution to the building's owner not to exceed $484 for the breaking and entering, and one year of imprisonment, sentence suspended, with one year of probation for the simple assault. The sentences are to run concurrently. We affirm.

On appeal defendant argues that the trial justice abused his discretion in allowing the prosecution to cross-examine defendant regarding specific prior bad acts. To the extent that these acts were admissible to impeach defendant's direct testimony, he claims, the prosecution went beyond the permissible scope of cross-examination for impeachment. He further alleges that even if the impeaching evidence were admissible, its probative value would be outweighed by its prejudicial impact on defendant. The defendant finally argues that the trial justice abused his discretion in not instructing the jury on the limited use of the impeaching evidence.

On February 17, 1985 at approximately 1:20 a.m. two Central Falls police officers responded to a reported breaking and entering at the Sunshine Market (the market). The defendant was seen approximately one block from the market, running away with a bundle of cigarette cartons under his arm. Police Lieutenant Harry Minke saw defendant but proceeded to the market. Officer Edward J. Lavoie arrived just after Minke and pursued defendant. When ordered to stop, defendant dropped the bundle of cigarette cartons but continued running. Lavoie pursued defendant on foot. During the chase Lavoie continued ordering defendant to stop. After several blocks Lavoie saw defendant remove something black from his pocket and throw it to the ground. (Lavoie later retraced his steps to discover that this black item was defendant's wallet with identification inside.) The defendant was finally apprehended in his own yard. A struggle ensued in which Lavoie sprained his thumb.

At the market Minke found a broken plate-glass window and cigarette cartons in disarray. Ronald Raheb, the owner of the market, testified that, based on the code numbers on the cigarette cartons, he was able to determine that the cartons missing from the market were the same cartons that defendant had dropped while being pursued by Lavoie.

The defendant testified on his own behalf. In response to his attorney's question "Mr. Soares, did you break into the Sunshine Market on February 16, 1985, in the early morning hours?" defendant re-

sponded, "No. I just don't do that type of thing."

At side-bar the prosecutor informed the trial justice that she intended to introduce evidence that one night in 1976 defendant broke into and entered the Fraternal Order of Eagles Club with intent to commit larceny. During a lengthy side-bar conference the prosecutor explained that she did not intend to introduce evidence that defendant pleaded nolo contendere or that he received probation. The prosecutor sought only to impeach defendant's statement "I just don't do that type of thing" with evidence of a prior breaking and entering into a building at nighttime that involved a broken window and stolen cigarettes. The trial justice denied defendant's motion in limine to exclude the evidence of prior criminal conduct and permitted the prosecution to cross-examine defendant regarding the breaking and entering at the Fraternal Order of Eagles. The trial justice ruled that the cross-examination should be limited to the specific facts necessary to impeach defendant's statement "I just don't do that type of thing"; if defendant continued to deny the impeaching evidence, the prosecutor could go into further detail.

We agree with defendant that the evidence of his specific bad conduct at the Fraternal Order of Eagles and subsequent nolo contendere plea is not admissible at trial to show that defendant probably committed the crime as charged in this case. *See State v. Gobern*, 423 A.2d 1177, 1179 (R.I.1981); *Doughty v. De Amoreel*, 22 R.I. 158, 159, 46 A. 838, 838 (1900). However, the evidence in question in this case was not used for this purpose.

The defendant concedes that the evidence about the break at the Fraternal Order of Eagles was admissible for the limited purpose of impeaching his statement "I just don't do that type of thing," but it is his position that the prosecution's cross-examination went far beyond the narrow fact pattern necessary to impeach defendant's off-hand remark. We disagree.

In *State v. D'Alo*, 435 A.2d 317, 320 (R.I.1981), this court held that evidence of prior criminal conduct is admissible to impeach the credibility of a defendant who tells an untruth during his direct testimony. We held that "a defendant should not be allowed to profit by a gratuitously offered misstatement." *Id.* (quoting *United States v. Beno*, 324 F.2d 582, 588 (2d Cir. 1963), *cert. denied*, 379 U.S. 880, 85 S.Ct. 147, 13 L.Ed.2d 86 (1964)).

In *D'Alo* we limited the admissible impeaching evidence to the specific facts of the perjured testimony by the defendant. 435 A.2d at 320. However, we have also stated that

> "[a]ny testimony that tended to support defendant's version of the incident should properly have been subjected to a searching cross-examination to rebut not only the facts stated but also the inferences and conclusions that might be drawn from such testimony." *State v. Dowell*, 512 A.2d 121, 124 (R.I.1986)(citing *State v. Soto*, 477 A.2d 945, 949 (R.I.1984)).

In *Dowell* the defendant was convicted of first-degree sexual assault and burglary. On direct examination the defendant created the impression that his decision to call the victim was impulsive and highly unusual. In fact, the defendant had made other sexually explicit telephone calls to other women and had kept notes of the phone numbers on pornographic magazines. We held that the trial justice did not err in permitting the cross-examination of the defendant about other phone calls to other women in order to correct the false impression the defendant had created.

 In reviewing this defendant's testimony during cross-examination, we find that he continued to evade or deny his prior criminal conduct, thus forcing the prosecution to delve further into his past acts. On cross-examination defendant was asked, "[Y]ou testified * * * when * * * asked * * * if you broke into the Sunshine Market that you had not done that and that you do not do that type of thing; isn't that true?" The defendant responded affirmatively. The prosecutor then asked, "Mr. Soares, isn't it true that on August 25, 1976 in the City of Central Falls you broke and entered the * * * Fraternal Order of Ea-

gles, in the nighttime, that cigarettes were taken and that a window was broken; isn't that true?" The defendant denied breaking into the Fraternal Order of Eagles, breaking into the cigarette machine, or taking any cigarettes and volunteered that he had entered a plea of nolo contendere to the charge. When the prosecutor attempted to clarify what happened at the Fraternal Order of Eagles, defendant continued to deny and evade the impeaching cross-examination. In these circumstances defendant's testimony was open to a thorough cross-examination in order to rebut his self-serving statement as well as the inferences it created. *See Dowell,* 512 A.2d at 124. *See also Doyle v. Ohio,* 426 U.S. 610, 617 n.7, 96 S.Ct. 2240, 2244 n.7, 49 L.Ed.2d 91, 97 n.7 (1976) ("unless prosecutors are allowed wide leeway in the scope of impeachment cross-examination some defendants would be able to frustrate the truth-seeking function of a trial by presenting tailored defenses insulated from effective challenge"); *Walder v. United States,* 347 U.S. 62, 65, 74 S.Ct. 354, 356, 98 L.Ed. 503, 507 (1954) (where the defendant made a sweeping untruthful comment that he had never dealt or possessed any narcotics, the defendant cannot "affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility" with illegally obtained impeaching evidence); *United States v. Babbitt,* 683 F.2d 21, 25 (1st Cir.1982) (once defendant "testified voluntarily—and untruthfully—on the subject [of his police record], he could not complain if the actual facts were brought to light"). We do not find that the prosecution exceeded the permissible scope of cross-examination.

■ We also decline to find that the probative value of the impeaching evidence is outweighed by its prejudicial impact, as defendant asserts. On cross-examination the prosecution did question defendant extensively about the incidents at the Fraternal Order of Eagles. The defendant's continued denial of his participation in the prior crime precipitated more prolonged cross-examination by the prosecution in order to refute his gratuitous assertion that "I just don't do that type of thing." Prose-

cutors must be allowed latitude during cross-examination for impeachment. *See Doyle v. Ohio,* 426 U.S. at 617 n.7, 96 S.Ct. at 2244 n.7, 49 L.Ed.2d at 97 n.7. Limiting cross-examination after a defendant has perjured himself frustrates the truth-seeking function of the trial. *Id.* We find that the probative value of the prosecutor's cross-examination outweighs any prejudicial impact it may have had.

■ In his instructions to the jury the trial justice explained that the weight of a witness's testimony may be considered in light of "evidence that on some former occasion he or she made a statement or acted in a manner inconsistent with his or her testimony in this case on matters material to the issue." The trial justice further explained that these prior inconsistent statements could not be used as evidence but only could be used to impeach the credibility of the witness.

The defendant argues that the trial justice was in error in refusing to give an instruction to the jury that a plea of nolo contendere followed by a period of probation does not constitute a conviction for the purpose of impeachment as set forth in *Korsak v. Prudential Property & Casualty Insurance Co.,* 441 A.2d 832, 835 (R.I. 1982). Although such an instruction would be required in normal circumstances, it would be unwarranted and very confusing to the jury in this particular case. Here, the state would never have been allowed, on cross-examination, to introduce evidence of defendant's involvement in the Fraternal Order of Eagles break. He had been charged for that offense, he had pleaded nolo contendere and was given a period of probation that he apparently served without incident. Under *Korsak* this would not be a conviction that the state could raise to impeach his credibility. However, because defendant claimed on direct examination that he was not the type of person to "do that type of thing," and then, on cross-examination, denied that he had committed the Fraternal Order of Eagles break and volunteered that he had pleaded nolo contendere to that charge, the evidence was before the jury to consider all its implica-

tions. The defendant was entitled to the instruction on prior inconsistent statements, and that instruction was given by the trial justice.

 Furthermore, we agree with the trial justice that the remaining evidence in the case established guilt beyond a reasonable doubt. The defendant was seen by the arresting police officer running from the scene of the crime with an armful of cigarette cartons later identified as merchandise stolen from the market; he refused to stop at the police officer's warning, threw away the contraband during the chase, and was caught and subdued only after a struggle. The circumstances of the defendant's apprehension and arrest alone would warrant a guilty verdict. *See State v. Hughes,* 494 A.2d 85, 91–92 (R.I.1985).

For these reasons the defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers of the case are remanded to the Superior Court.