STATE

v.

Frederick TUTT.

No. 92–171–C.A.

Supreme Court of Rhode Island.

March 24, 1993.

**460**

Jeffrey Pine, Atty. Gen., Aaron Weisman, Annie Goldberg, Asst. Attys. Gen., for plaintiff.

Edward C. Roy, Roy & Cook, East Greenwich, for defendant.

## OPINION

FAY, Chief Justice.

This case comes to us on appeal by the defendant, Frederick Tutt, from a Superior Court judgment wherein he was convicted of robbery, assault with intent to commit murder, commission of a crime of violence while armed, possession of a firearm after conviction of a crime of violence, carrying a pistol without a license, and kidnaping.

The defendant contends that the trial justice erred (1) by barring the proffered testimony of a defense witness, (2) by restricting the ability of defense counsel to cross-examine the victim, and (3) by failing to hold an evidentiary hearing on the issue of when the police discovered that the victim was using an alias.

The victim, Julio Ernesto Ayala–Alfaro (Julio), a.k.a. Edwin Vargas, was an expatriate from El Salvador, who entered the United States as an illegal alien in May 1989. In July 1989 Julio purchased the social security card of a United States citizen named "Edwin Vargas" and obtained employment under this assumed name in Massachusetts. At trial Julio testified to the following facts.

In the early morning of October 20, 1990, Julio exited his apartment and started the car he had borrowed to take his girlfriend home. He was sitting in the car with the engine running when he noticed someone to his left, trying to open the driver's door. He turned and saw a man wielding a gun. Julio identified the man as defendant, who worked across the street from Julio's residence. The defendant opened the door, pushed Julio to the passenger side, and climbed into the driver's seat. The defendant drove to an unidentified location and forced Julio out of the car at gunpoint. After motioning to Julio to lie on the ground, defendant removed the two gold chains from Julio's neck. The defendant knelt beside Julio, pressed the gun against his chest, and shot him. The defendant attempted to shoot Julio a second time, but the gun did not discharge. The defendant then removed his leather jacket and tied the sleeves around Julio's neck in an effort to strangle him. Julio passed out and was presumably left for dead.

Sometime thereafter Julio regained consciousness and managed to crawl to a wire fence some distance away. A woman passing by noticed Julio and called the police. Julio was taken to Rhode Island Hospital where he was treated for the gunshot wound and discharged ten days later.

A jury trial commenced on July 22, 1991. On the evening preceding the trial, the state learned that Julio's real name was not Edwin Vargas. Although the state did not inform defendant of this fact, defense counsel became aware of Julio's true identity prior to trial. Using this information in his opening statement, defense counsel depicted Julio as an illegal alien who had engaged in sexual misconduct with a fourteen-year-old girl. Defense counsel further stated that Mrs. Victor Carvajahal (Carvajahal), the mother of the girl, had observed Julio sexually molesting her daughter. On the basis of defense counsel's statement that Julio had committed a sexual assault, the prosecutor moved for a mistrial at the close of opening statements.

The trial justice denied the motion, and the prosecutor proceeded to present his case. The state subsequently moved in limine, requesting that the trial justice bar Carvajahal's proffered testimony about the alleged molestation. The trial justice granted the state's motion, holding that Carvajahal lacked personal knowledge of the alleged molestation. The trial justice, concluding that Carvajahal's daughter was the only person who could answer whether she consented to the sexual contact, permitted defense counsel to amend its discovery to permit her to testify.

During cross-examination of Julio, defense counsel questioned Julio extensively about his status as an illegal alien and his use of an alias. In an attempt to elicit the fact that Julio was arrested in San Diego for illegal entry into the United States, defense counsel posed the following question:

"When you were in San Diego, you had to post a bond?"

The prosecutor quickly objected to the question, and the trial justice sustained the objection. At sidebar defense counsel explained that he was laying a foundation in an attempt to determine "whether or not the police or prosecution have promised not to take any action against [Julio's] immigration status after they learned of it and he became a witness in the case." The

trial justice reiterated the sustainment and the cross-examination continued.

At the close of the state's case, defense counsel moved for a dismissal based on the state's failure to disclose that Julio was an illegal alien using an alias. Counsel alleged that the state's prosecutorial misconduct greatly prejudiced defendant's case. Finding no prejudice to defendant, the trial justice denied defendant's motion.

The jury returned guilty verdicts on all six counts, and the trial justice sentenced defendant to a term of twenty years' imprisonment. The defendant raises three issues on appeal. Having provided the background for this appeal, we shall address each claim separately.

I

MOTION IN LIMINE

Before reviewing the propriety of the trial justice's ruling on the state's motion in limine, we find it necessary to set forth the testimony that defendant intended to introduce through Carvajahal. The defendant made the following offer of proof at trial:

"[I]n June of 1990, Mrs. Carvajahal walked to the cellar stairs and heard something downstairs. She walked downstairs, it was semi-dark, she looked in, she saw [Julio] kissing or trying to kiss the young girl and attempting to rub her breasts. At that point, Mrs. Carvajahal * * * said 'what's going on?' * * * She told [Julio] to leave, and he said, 'I didn't do anything.' The girl was crying. Then the girl ran out crying. * * * The next day she spoke to her daughter. She went to ask her what happened. The daughter was crying. The daughter had not spoken to anyone else about what happened. When she was crying, she told her she was sexually molested. That's what I expect to find out from Mrs. Carvajahal."

The defendant now wants to introduce this testimony to contradict the assertion made by Julio on re-cross-examination that he did not touch or kiss Carvajahal's daughter. According to Julio, he and Carvajahal's daughter were in the basement, moving

bicycles. The defendant further argues that Carvajahal's testimony regarding the statements made by her daughter the next day was admissible as an exception to the hearsay rule under Rule 803(2) of the Rhode Island Rules of Evidence.

■ In granting the state's motion in limine, the trial justice implied that Carvajahal lacked sufficient personal knowledge of the alleged molestation. We agree.

Rule 602 of the Rhode Island Rules of Evidence states that "[a] witness may not testify to a matter unless evidence is introduced *sufficient to support a finding* that the witness has personal knowledge of the matter." (Emphasis added.) Our review of the record reveals that defense counsel failed to produce sufficient evidence indicating that Carvajahal's proffered testimony was based on requisite personal knowledge. Indeed, defense counsel represented that Carvajahal said that she

"saw [Julio] and her daughter in the cellar, that it was dark, that she couldn't make out exactly what was happening. She saw something that looked like kissing and touching of the breasts. Later on, her daughter told her she had been sexually molested by [Julio]."

Relying on this evidence, we find that Carvajahal's proffered testimony could not have been based on personal knowledge.

Furthermore, we find that defendant could not have introduced Carvajahal's proposed testimony even if she had had personal knowledge of the alleged molestation. Rule 608(b) of the Rhode Island Rules of Evidence provides, in relevant part, that

"[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility * * * may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."

Our case law has consistently reaffirmed this proposition, stating that "[a] witness may not be impeached on collateral matters by the introduction of extrinsic evidence. The cross-examiner is restricted to the answers of the witness." *State v. Brown*, 574 A.2d 745, 749 (R.I.1990) (quoting *State v. Bowden*, 439 A.2d 263, 268 (R.I.1982)). In *State v. D'Alo*, 435 A.2d 317 (R.I.1981), we carved an exception to this rule as it applies to witnesses who are also defendants. We noted that when the defendant in his direct testimony

"falsely states a specific fact, the prosecution will not be prevented from proving, either through cross-examination or by calling its own witnesses, that he lied *as to that fact.* The rationale behind this rule is not difficult to perceive, for even if the issue injected is irrelevant or collateral, a defendant should not be allowed to profit by a gratuitously offered misstatement." *Id.* at 320 (quoting *United States v. Beno*, 324 F.2d 582, 588 (2d Cir.1963), *cert. denied*, 379 U.S. 880, 85 S.Ct. 147, 13 L.Ed.2d 86 (1964)).

In the case at hand defendant avers that Carvajahal's testimony should be admitted for the purpose of contradicting Julio's denial of having sexually assaulted Carvajahal's daughter. We disagree with this assertion.

■ The *D'Alo* case stands for the proposition that a *defendant* who testifies may be impeached by extrinsic evidence. The matter before us, however, does not involve the testimony of a defendant. Julio was the victim of defendant's alleged assault, and as such, defendant was not entitled to impeach his rendition of what took place with Carvajahal's testimony. Although defendant was free to cross-examine Julio about the alleged kissing and touching of Carvajahal's daughter, defendant was limited to the answers given by Julio.

Because we conclude that a witness other than a witness-defendant cannot be impeached by extrinsic evidence, we need not address whether Carvajahal's testimony regarding the statements made by her daughter should be admitted under the ex-

cited utterance exception to the hearsay rule. Even if the statements did constitute an excited utterance, they would be inadmissible as improper impeachment evidence under Rule 608.

Therefore, for the reasons stated above, we affirm the trial justice's ruling prohibiting the proposed testimony of Carvajahal.

## II

### DEFENSE COUNSEL'S ABILITY TO CROSS-EXAMINE THE VICTIM

■ The Sixth Amendment to the United States Constitution and article I, section 10, of the Rhode Island Constitution guarantee a criminal defendant the right to cross-examine effectively any witnesses presented by the state. *See State v. Canning*, 541 A.2d 457 (R.I.1988). It is within the trial justice's discretion to determine the proper scope of inquiry on cross-examination, and this court shall not disturb the trial justice's ruling unless he or she has clearly abused his or her reasonable discretion. *Id.* at 461.

■ The defendant contends that the trial justice violated his constitutional right to effective cross-examination by limiting defense counsel's ability to inquire into Julio's status as an illegal alien and his fraudulent use of an alias. In particular, defendant alleges that the trial justice's refusal to allow inquiry into Julio's posting of a bond in San Diego precluded defendant from showing bias on the part of Julio.

After reviewing the transcript, we believe that sustaining the state's objection to defendant's question about the posted bond in no way limited defendant's ability to cross-examine Julio. After the trial justice refused to allow the question of whether Julio was required to post a bond, defense counsel continued with his cross-examination. During this intensive questioning, Julio revealed his true identity and admitted that he had purchased Edward Vargas's social security card for the purpose of gaining employment. Moreover, defense counsel was able effectively to cross-examine Julio regarding whether he was offered prosecutorial immunity in exchange for his testimony against defendant. The defense counsel pursued the issue through the following exchange:

"Q Did [the prosecution] make any promise to you that they weren't going to take any action against you as an illegal alien once you became a witness in this case?

"A [Prosecutor]: I have no power to do that.

THE COURT: I'll allow it.

"A They can do it."

This exchange was followed by twenty-one pages of additional impeaching cross-examination. We therefore conclude that precluding the defense from asking the question regarding Julio's posting of a bond did not affect defendant's ability to cross-examine Julio and establish his bad character and bias.

■ Furthermore we find the bond issue to be wholly irrelevant to the issues before us. As stated in Rule 401 of the Rhode Island Rules of Evidence, "relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The case at hand involved a prosecution for, among other things, kidnaping and attempted murder. Julio admitted that he entered the country illegally and used an alias to obtain employment, and defendant amply explored these issues on cross-examination. The fact that Julio posted a bond in San Diego had nothing to do with his bias against defendant, nor did it have the tendency to make any fact consequent to the determination of this case more or less probable. We therefore find that the trial justice did not abuse his discretion in sustaining the state's objection.

## III

### FAILURE TO HOLD AN EVIDENTIARY HEARING

■ Detective Timothy O'Brien of the Providence police department testified that he knew of Julio's true identity shortly after his arrest. Despite having this

knowledge, Detective O'Brien failed to notify either the prosecution or the defense of Julio's real name. The defendant contends that the trial justice erred in failing to hold an evidentiary hearing to determine when defendant first learned of the victim's true identity and whether he was, in fact, prejudiced by the delay in disclosure. We disagree.

In *State v. Simpson*, 595 A.2d 803, 808 (R.I.1991), this court held that a trial justice must grant the defendant either a mistrial or a continuance for an adequate period in order to discover new and unexpected information when failure to do so would be prejudicial to the defendant. Additionally, if the prosecution's failure to disclose is deliberate, a new trial shall be granted regardless of whether the nondisclosure is prejudicial to the defendant. *State v. Wyche*, 518 A.2d 907, 910 (R.I.1986).

After reviewing the trial record, we are of the opinion that the prosecution's failure to disclose Julio's true identity was neither deliberate nor prejudicial. The prosecutor explained that he did not learn of Julio's true identity until he met with Julio the day before the trial. Moreover, defense counsel became aware of Julio's status as an illegal alien prior to trial and admitted that the defendant was not prejudiced by this nondisclosure. We therefore find the defendant's final argument to be without merit.

For the reasons stated, we deny and dismiss the defendant's appeal on all grounds. The judgment of conviction is hereby affirmed, and the papers in the case are remanded to the Superior Court.