STATE

v.

Brian M. **CUDDY.**

No. 93–608–C.A.

Supreme Court of Rhode Island.

May 27, 1994.

---

Aaron Weisman, Neil F.X. Kelly, Dept. of Atty. Gen., for plaintiff.

Richard M. Casparian, Public Defender, Janice Weisfeld, Paula Rosen (argued), Asst. Public Defenders, for defendant.

## OPINION

PER CURIAM.

This matter came before this court on May 12, 1994, pursuant to an order directing both parties to appear in order to show cause why the issues raised in this appeal should not be summarily decided. The defendant, Brian M. Cuddy (Cuddy), appeals from his conviction on two counts of aiding and abetting the entry into a dwelling with intent to commit larceny and one count of possession of a hypodermic needle and a syringe. With respect to each aiding-and-abetting count, the trial justice sentenced Cuddy to ten years at the Adult Correctional Institutions (ACI), with five years suspended and five years of probation, including drug counseling, among other things. With regard to the possession charge, the trial justice sentenced Cuddy to three years at the ACI but suspended the sentence and ordered three years of probation to begin upon his release.

Cuddy's codefendant, William C. Stone (Stone), was charged in the same information as Cuddy with two counts of entering a dwelling with the intent to commit larceny and one count of attempting to break into and enter a dwelling. At trial, however, Stone's whereabouts were unknown.

We shall review some of the evidence introduced at trial before we address Cuddy's arguments on appeal. Brenda Centracchio (Centracchio) testified that on December 13, 1991, she was at home when she saw and heard a man trying the doors to her house in Coventry. She grabbed a portable telephone and a knife, dialed 9–1–1, and hid in her garage. The man then proceeded to kick at one of the doors. Centracchio gave the police operator directions to her house and then heard someone outside the garage mention a "cruiser" as if the person was speaking to someone else. The police arrested Cuddy as he drove down the driveway. They found a needle and a syringe in his pocket. In his car the police found various items, including a videocassette recorder and a clock radio later identified as the property of Centracchio and her husband.

Gertrude Devane (Devane) testified that on the morning of December 13, 1991, she visited the hairdresser and went shopping. Upon her return home to Coventry at approximately 12:30 p.m., she found that someone had broken into her house. Devane called the Coventry police, and an officer arrived at her house a short while later. She subsequently identified as her property certain items that had been confiscated from Cuddy's car earlier that day.

Cuddy testified that he had met Stone when they both lived at Amos House in Providence. Stone had asked Cuddy to drive him to his uncle's house on the day in question so that he could pick up some of his belongings. Cuddy told Stone that he could not give him a ride to Coventry but agreed to meet him at a restaurant in Coventry and give him a ride back to Providence with the belongings.

Cuddy testified that on the morning of December 13, 1991, he visited a doctor's office, made a counseling appointment, stopped for coffee and to cool down his car, which had been overheating, and then met Stone at the agreed-upon location. Stone asked Cuddy to drive him to his uncle's house. Cuddy testified that he refused at first but then agreed to drive Stone there if he would take little time. Cuddy explained that he also wanted to cool down his car.

Cuddy followed Stone's directions to the house and started cooling down his car while Stone went toward the house. Stone returned to the car, carrying two square objects, and placed them in the back seat. He then proceeded back toward the house again. Stone returned a few minutes later and stated, "We've got company." Cuddy responded, "Like what? A police cruiser?" At this point, Cuddy testified, he was wondering what Stone was doing and whether it was "on the level." He "kind of froze" and started leaving without Stone, but he was pulled over by the police at the bottom of the driveway.

Cuddy also stated on direct examination that in September and November of 1991 he received a suspended sentence of one year with a year of probation on three occasions: for trespassing, for shoplifting, and for simple assault and shoplifting.

■ In this appeal Cuddy claims that the trial justice erroneously permitted the prosecutor to cross-examine him improperly, allowed improper use of evidence of other crimes to rebut assertions that Cuddy never made himself but that the prosecutor made, and permitted improper rebuttal testimony. Cuddy asserts that in response to his counsel's objection to the prosecutor's questioning him regarding the registration of his car in Coventry, the prosecutor stated that she was attempting to rebut Cuddy's testimony that he was "not familiar with Coventry at all." He correctly states that he did not testify that he was unfamiliar with Coventry; rather, his testimony was that he had lived in Coventry for about a year and was familiar with parts of it but needed directions from Stone in order to drive to the address that purportedly was the house of Stone's uncle.

Cuddy also challenges the prosecutor's use of his prior convictions, to which he admitted on direct examination, by asking whether he had driven himself on those dates. Cuddy's counsel moved to pass the case, claiming that the guilty findings and pleas were to be used solely for credibility purposes, not as evidence. The prosecutor explained that she was pursuing this line of questioning to challenge his credibility and because he had testified that he did not know his way around and that Stone, who was from Canada, had had to give him directions.

The record reflects that Cuddy did not testify that he did not know his way around Coventry and that he attempted to clarify what he meant by explaining that Stone's directions assisted him in driving to the house that was supposed to have been that of Stone's relative. We think that Cuddy's explanation sufficed to clarify any inaccurate statement that the prosecutor may have made. Any such error that may have been made in this regard was therefore harmless. *See* Super.R.Crim.P. 52. Furthermore, we find that Cuddy's argument that the prosecutor improperly used his prior convictions is without merit.

Cuddy also argues that the trial justice committed clear error under *State v. McDowell,* 620 A.2d 94 (R.I.1993) (per curiam), and *State v. O'Dell,* 576 A.2d 425 (R.I.1990), when he allowed the prosecutor to introduce improper rebuttal testimony. The prosecutor asked Cuddy numerous questions regarding the details of his travels on the morning of December 13, 1991, including whether he was in Coventry at any point. Cuddy initially testified that he was not in Coventry before 11 a.m. but then equivocated and stated that he was unsure of the timing. The trial justice later permitted, over Cuddy's objection, the rebuttal testimony of a Coventry police department dispatcher. She testified that she received two reports on the morning of December 13, 1991, one prior to 11 a.m., notifying the police of a suspicious vehicle, which car matched the description and license plate of Cuddy's car.

■ Cuddy claims that the prosecutor was improperly permitted to impeach him on a collateral matter using extrinsic evidence. We have reviewed the cases that defendant cites and conclude that they do not assist his position. Additionally, we recently reaffirmed the validity of an exception to the rule against impeaching witnesses on collateral matters with extrinsic evidence that we had articulated prior to the adoption of the Rhode Island Rules of Evidence in 1987. *See State v. Tutt,* 622 A.2d 459, 462 (R.I. 1993). According to this exception, it is permissible to impeach by extrinsic evidence on collateral matters a defendant who testifies concerning such matters on direct examination. *See id.*

Cuddy further asserts that the trial justice erred by failing to instruct the jury adequately on the law of aiding and abetting. Specifically he claims that the trial justice erred by not including in his charge the proposition set forth in *State v. Gazerro,* 420 A.2d 816 (R.I.1980), that mere presence at a crime scene is insufficient to support a conviction on a charge of aiding and abetting.

■ When a defendant challenges a specific segment of a trial justice's instructions,

this court evaluates "the jury charge as a whole to determine 'whether the trial justice delineated the legal principles to comport sufficiently with due process requirements.'" *State v. Correia,* 600 A.2d 279, 287 (R.I.1991). Although the trial justice did not state what Cuddy requested in this regard, our review of the charge in its totality leads us to conclude that it satisfied our standards. In addition, although we do not know why the trial justice did not give the requested instruction, one possible reason is that he did not think it applicable.

We do not address Cuddy's other claims of error since we find them to be without merit.

After hearing the arguments of counsel and reviewing the memoranda that the parties submitted, this court concludes that cause has not been shown. Consequently, the defendant's appeal is denied and dismissed, and the judgment appealed from is affirmed.