**STATE**

v.

**Ronald WALSH.**

**No. 97–394–C.A..**

Supreme Court of Rhode Island.

June 3, 1999.

Annie Goldberg, Aaron L. Weisman, Providence, for Plaintiff.

Janice M. Weisfield; Paula Rosin, Providence, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## O P I N I O N

PER CURIAM.

This appeal was taken by Ronald Walsh (Walsh) from his conviction following a jury trial of conspiracy to commit robbery, robbery by the use of a dangerous weapon, and possession of cocaine.[1] Pursuant to Rule 12A of the Supreme Court Rules of Appellate Procedure, this case came before a single justice of this Court who ordered Walsh to appear and show cause why the issues raised in this appeal should not be summarily decided. After reading the parties' memoranda and hearing their arguments, we determine that cause has not been shown, and therefore proceed to decide the merits of this appeal at this time.

The issues Walsh raises on appeal are as follows: (1) that the trial justice erred in refusing to allow Walsh to cross-examine

an assistant attorney general for the purpose of impeaching a state's witness, and (2) that the trial justice abused his discretion when he determined that evidence of Walsh's prior criminal convictions would be admitted during trial for the purpose of impeaching his credibility should Walsh testify in his own behalf.

### Facts and Travel

Richella Woolley (Woolley), a state's witness against Walsh, testified that she was with Walsh and Gatone on December 10, 1994, getting high on cocaine inside her apartment. According to Woolley, after their supply of cocaine was exhausted, the trio concocted a scheme to obtain financing for their next cocaine purchase. Woolley and Walsh left the apartment briefly to "case" a store on Chalkstone Avenue called "Baskets by Corrie." Thereafter, Woolley claims that Walsh and Gatone left the apartment together and returned approximately twenty-five minutes later with a handbag.

The owner of the basket shop, Corrine Gibalerio, testified that on December 10, 1994, a man wearing a baseball cap and carrying a gun burst into her shop shouting, "I'm not [expletive] fooling around." He pushed her to the floor, pointed a gun at her face, grabbed an employee's handbag from the floor, and fled. Several days later on December 13, 1994, Sergeant Stephen Bathgate of the Providence Police Department and another officer followed and eventually chased a red van through the streets of Providence. He testified that he recognized Gatone as the driver of the van and Walsh as the passenger. During the chase, a silver handgun and three small plastic bags of a white substance, later determined to be cocaine, were thrown from the passenger-side window of the van. The police apprehended Walsh and seized certain items from the van that were subsequently admitted into evidence

---

1. Walsh was tried together with Thomas Gatone (Gatone), whose conviction was subsequently overturned for a violation of his right to represent himself, and therefore not the subject of this appeal.

which included an orange and green baseball cap, a black toque hat, sunglasses, and a plastic bag containing a white powdery substance.

On November 3, 1995, a jury found Walsh guilty of robbery by use of a dangerous weapon, conspiracy to commit robbery, and illegal possession of cocaine. On January 11, 1996, final judgment was entered. Walsh then filed a notice of appeal to this Court, and raises the following issues.

## Woolley's Impeachment

On cross-examination, Walsh questioned Woolley regarding alleged perjurious statements she had previously made in front of the grand jury in connection with this case. At trial, Woolley admitted that she had been convicted of several crimes including shoplifting, breaking and entering, forgeries, receiving stolen goods, operating a motor vehicle on a suspended license, fraudulent use of credit cards, illegally obtaining a credit card, and larceny. Walsh alleges, however, that during the grand jury proceeding, Woolley attributed her thirty-year suspended sentence to the crime of operating a motor vehicle on a suspended license. When Woolley was confronted with a transcript of her grand jury proceeding, she insisted that there was an error in transcription, and that she did not make the statements contained in the transcript. Thereafter, Walsh continued in his effort to impeach Woolley by attempting to cross-examine Special Assistant Attorney General, Albert Medici (Medici), a witness called by the state in its case in chief, who presented the case to the grand jury and knew the information Woolley had provided at that proceeding. While acknowledging that Woolley's grand jury testimony was not the subject of direct examination, Walsh requested that he be allowed to "elicit * * * or attempt to elicit [impeaching evidence against Woolley from Medici] to avoid having to recall this witness" as his own. At a sidebar conference, the trial justice denied Walsh's request to pursue this line of questioning.

Walsh argues that the trial justice committed error by precluding the introduction of this evidence to demonstrate that Woolley lied under oath in front of the grand jury about the extent of her criminal record. In making his determination, the trial justice relied on *State v. Tutt,* 622 A.2d 459 (R.I.1993), and *State v. Cuddy,* 641 A.2d 1308 (R.I.1994). As a general rule, a non-defendant witness may not be impeached by extrinsic evidence on a collateral issue, and the cross-examiner is limited to the answers provided by the witness sought to be impeached. *Tutt,* 622 A.2d at 462; *see also State v. Brown,* 574 A.2d 745, 749 (R.I.1990). However, Walsh argues that Woolley's credibility "is not at all collateral," and therefore, the case law that the trial justice relied upon to exclude the testimony is inapplicable. We reject this argument.

This Court has previously concluded that the exercise of discretion by the trial justice in limiting the scope of cross-examination will not be disturbed absent a clear abuse of that discretion. *State v. Bettencourt,* 723 A.2d 1101, 1110 (R.I. 1999); *see also State v. Anthony,* 422 A.2d 921, 924 (R.I.1980). The trial justice also has wide discretion in determining the appropriate order of proof and it was well within his discretion to limit cross-examination to that which was addressed on direct examination. *See State v. Lassor,* 555 A.2d 339, 351 (R.I.1989). In this instance, the trial justice denied Walsh's request to cross-examine Medici regarding subject matter beyond the scope of direct examination. Moreover, we conclude that the evidence which Walsh attempted to elicit from Medici was clearly an attempt to impeach Woolley on a collateral matter through the use of extrinsic evidence, and therefore was properly excluded. Finally, although Walsh was permitted to cross-examine Woolley regarding her own alleged perjurious statements, he is limited to the answers Woolley provided.

### Walsh's Prior Convictions

 Walsh also argues that the trial justice abused his discretion by ruling that Walsh's criminal convictions would be admissible for impeachment purposes if he testified during the trial. The prior convictions that the state sought to admit into evidence were: (1) a conviction in 1995 for possession of a controlled substance; (2) a conviction in 1984 for possession with intent to deliver a controlled substance; (3) a conviction in 1980 for entering a building with the intent to commit a felony; and (4) a conviction in 1980 for second degree larceny. Although there is no bright-line time limit for the use of prior convictions, evidence of a prior conviction shall not be admitted if it is "too remote in time" that it would amount to undue prejudice. *See State v. Simpson*, 606 A.2d 677, 680 (R.I. 1992); *see also* Advisory Committee's Note to Rule 609. Moreover, "the determination of what is so remote as to constitute undue prejudice is an issue to be left to the discretion of the trial judge." *Id.* In the instant case, the trial justice stated that "the state should have the right to impeach Mr. Walsh, in the event that he takes the stand to testify in this case, and use the convictions to impeach him." *See* G.L.1956 § 9–17–15. The trial justice was correct in stating that "Rhode Island does not, unlike the federal system, draw a bright line at the ten-year period, [particularly when] there is a continuing period of misconduct." *See State v. Mattatall*, 603 A.2d 1098, 1117 (R.I.1992); *see also State v. Sands*, 76 N.J. 127, 386 A.2d 378, 386 (1978). Prior to the instant case, Walsh had committed at least four criminal offenses from 1980 through 1995, which the trial justice presumably determined to be sufficient to establish a "continuing period of misconduct." We agree and conclude that it was not an abuse of the trial justice's discretion in finding that Walsh's prior convictions suggested a pattern of criminal activity not wholly unrelated to the present case.

Accordingly, the defendant's appeal is denied and dismissed and the papers in this case are remanded to the Superior Court.